Well, here is Moses v. Cashcall, Inc., Mr. Silver. Thank you, and may it please the Court. I'm Jay Silver. I'm here for the affiliate Cashcall. Suffice it to say that we believe that district court and bankruptcy court opinions in this case were seriously flawed. If allowed to stay, this circuit will be an outlier in this whole nexus of what a bankruptcy court should or should not do where there's an arbitration clause. And in this case, the district court opinion in particular, it really didn't follow White Mountain, which is the key precedent in the Fourth Circuit. It ignored a Third Circuit precedent, the Mintz case, that we cite in our briefs. And we kept sort of saying, pick me, pick me, to both the bankruptcy and the district court to say, follow this case because it says, and although in Mintz it was a core claimant issue, it said that in that case, this kind of claim where a debtor alleges usury, where it alleges a violation of debt collection practices, where it's filed in response in part to a proof of claim, the Third Circuit says that should go to bankruptcy. I mean, excuse me, that should go to arbitration. And the issue in this case is that our claim will have no impact in the debtor's reorganization. She's already had her plan confirmed. It doesn't impact really any of the creditor claims in the case. She will receive her discharge. It doesn't delay anything or impact anything. Neither the bankruptcy court nor the district court applied the McMahon analysis, which is the key here. What McMahon says is that when you've got this conflict between two statutory schemes, in this case, the bankruptcy code and the FAA, what you have to do is find unless there's some textual or legislative history, if the claim is within the scope of the Arbitration Act. Let me ask you, what would happen if you were permitted to withdraw the claim, proof of claim? Could you, in that circumstance, have enforced it under Cheyenne law in some other place? Enforce the debt? Yes. By withdrawing the proof of claim? Not in this case, because we said both in our plea. No, no, no. I said if you were allowed to withdraw. Right. Then you wouldn't be in the bankruptcy case at all. And the question is, would you still have a claim against her under the note that she signed in this case? No, because we affirmatively said that we were abandoning and releasing that claim in our plea. Well, you were withdrawing your proof of claim. But we did more than that. I mean, we answered affirmatively both in the answer in response to the adversary proceedings she filed, but also in connection with our motion to withdraw. Well, she also asked for a declaration that it was an illegal, and you wouldn't agree to that. And my question is, I guess maybe I'll ask in a different way. Does the tribe – if she were to file a suit in state court seeking to declare that that's an illegal debt under the North Carolina law, would she have faced an immunity defense? Under the Cheyenne River, yes, sir, she would have. But she also would have filed – faced a motion to stay and to compel arbitration. And there is litigation. Again, I'm not here today really to talk about – No, but we're talking about the discretion of the bankruptcy judge, why he refused to let you get out and to keep the case even though you wanted to get out because she had filed a false claim. And I'm suggesting to her – suggesting that by your filing a proof of claim, you waived that immunity. And that seems to be maybe another reason why it's beneficial to have all these issues resolved in one place, which is one of the purposes of the Bankruptcy Act. With all respect, where there is a claim that's asserted that's within, particularly a non-court claim, that's within the scope of the arbitration clause – She says your proof of claim is unjustified because it's an illegal debt. Correct. And that determination that it was an illegal debt also leads to the possibility of awarding damages. But that is not a waiver. It wasn't in – No, it's – no, the waiver was – the waiver of your immunity was filing a proof of claim. But that's not a waiver of our right to arbitration. Well, that's the different issue. That question is whether enforcing the arbitration in this context where there is a court claim and a non-court claim closely related, implicated. A lot of the cases you cited were simply non-court claims. But here we have clearly a court claim and a non-court claim very closely linked, and whether awarding arbitration would frustrate the purposes of the Bankruptcy Act. And actually what we have, the cases that we cited were also court claims, where it said that actually in the courts of appeal, there's a fairly lengthy, extensive body of law in the courts of appeal that say even as to a court claim, where there's an arbitration clause that bears on us to that claim, it in fact – There really is no arbitration under the Cheyenne law, that there aren't any rules. Other courts have made those findings. That's not the position we've taken here. Well, you wouldn't take that position. But the frustration is that when a debtor is confronted with debts they can't handle, they can go into bankruptcy and have all the claims throughout the nation through nationwide service of process pulled into one forum, resolved efficiently to give the debtor a new start. And it seems to me that the debtor could claim in this case, and the bankruptcy court seemed to think so, that if we allow the arbitration to go out and now that she's going to be fighting immunities and not even know where the arbitration can take place, whether there is arbitration at all, that the fragmentation really undermines the effort of this person to get a new start. I hear two points to your question. I want to address the second first, and that's as to this validity of the arbitration, which was not raised below, which was not addressed by the district or bankruptcy court, and where we've consistently said she has the right to go to AAA or to JAMS for free. Well, it doesn't say that. It says it will be administered. It uses the word administered by AAA or JAMS. But it still says the right is under Cheyenne law before Cheyenne arbitration. It actually says the procedure, though, is with respect to under the consumer rules. Procedure, administered. It will be administered by the AAA or JAMS, right? That's true. But it also makes clear, though, that, again, it's not just – it says, but it's in accordance with the rules of that arbitral panel. So where – is there a Cheyenne arbitrator? Is there somebody who serves as a Cheyenne arbitrator? No, and I want to – that's the – the court in HELT, when it was looking at this full range of a number of different arbitration agreements, it said that the problem it had with this specific language, which is different from other language my client has used in the past, it just said that it read it as requiring that there be a Cheyenne River Sioux Tribe individual who is actually an arbitrator. We think that's a misreading. And it ultimately, in that case, HELT said, I'm not going to reach these issues today. I'm going to stay this proceeding to – for the tribal exhaustion. I'm going to defer all rulings at this time with respect to the arbitration clauses. In this proceeding, the debtor hasn't come forward until this appeal and said, oh, we have questions about this particular arbitration clause. What we've said throughout is you get to go and pick a AAA or JAMS administrator and decider or arbitrator. You get to have this within 30 miles of your house. You get to do it for free. The difference in this case, and going back to your question about centralization and convening everything. I was articulating what courts have recognized to be one of the benefits and purposes of bankruptcy, which is, of course, constitutionally established. But what courts have also said is that does not trump the right to arbitrate. And in particular – Well, it doesn't say that categorically. It depends. It does depend. And that's my point, is here you have to find, before you even get to the discretion point, there's a key that unlocks the right for the bankruptcy court to invoke some kind of discretion to keep a case like this. And usually that's a core case, not a non-core case, but we can talk about that. And that key, though, it has to find there's actually an inherent conflict with respect to the debtor's ability to reorganize. That's raised with respect to the claim that's being asserted. Here, there is no such conflict. They can't really articulate a conflict that existed at the time we moved to stay or in connection with a year ago when this was all being hashed out. She already has her plan confirmed. She already has said unsecured creditors aren't going to get anything. There's no inherent conflict here. Like in White Mountain, however, there the court said this is a core proceeding. And we're going to find that the bankruptcy court properly declined the motion to stay where, in a commercial context, the dispute was about whether a particular creditor's claims were – whether they were debt or equity. And they said, look, this is our analysis, is that this debtor is a Chapter 11 debtor trying to reorganize. If we allow it to go forward in arbitration, creditor is going to have an issue doing business. Management is going to be distracted. There are going to be extraordinary additional costs and it's going to be extremely difficult for this debtor to reorganize. That's not this case. And like Metz, for instance, where there was a proof of claim file, where in fact there were claims that the debt at issue was usurious and predatory and all that baggage, so-called, went with it. The Third Circuit said, no, what you look at is this is just about money damages. That's not inherent. It doesn't arise from the bankruptcy case. It's not a – even though the party stipulated it as a core claim, the Third Circuit sort of said, we're not sure how you got there. But even accepting that, unless you can show that by asserting this non-core claim, there's a conflict, there's a serious interference with the debtor's ability to reorganize. That's not what this is about. The debtor is reorganized. She's on her way performing under her Chapter 13 plan. And in fact, that's why Metz and a number of other cases have said, in that case, particularly as to a non-core claim, which are her debt collection claims under the North Carolina Debt Collection Act. She says as to a non-core claim, that doesn't get you anywhere. Now, I do want to – I want to point out that, again, the district court said, well, wait a minute here, is I've got an objection or a DJ as to the proof of claim that you filed, Mr. Silva. And I've also got, though, where the debtor is alleging that you breached Chapter 75, 54, 51 with respect to trying to collect on this debt. And because those claims are overlapping, actually the court said it would rise and fall based on the determination as proof of claim. With all respect to the district court, it was wrong. In other words, what the debtor is claiming here is – and if you read the statute, it says that you've got to make threats, you've got to make misrepresentations, you've got to engage in harassing conduct. It's not all about just whether or not there's a valid proof of claim with a valid loan. She's claimed emotional distress. She claimed damages. It's not coextensive. The question, again, is, is the claim that she has asserted here – The district court was concerned also about the inconsistent results because the opposition to the proof of claim could determine or reach one result as to the legality of the loan, whereas a North Carolina state court or an arbitration could reach a different. And the Supreme Court has said that just the possibility of inconsistent results when you're trying to parse out different claims doesn't get you anywhere. And that was the holding – and KPMG, it says what we require when a district court or a bankruptcy court is parsing through what claims are arbitral, should be arbitrated and shouldn't be. It said what you do – you do that on a claim-by-claim analysis. And the fact that it's inefficient to do it that way or that there's more cost or, in fact, that it could lead to inconsistent results doesn't make a difference. For sure it does. It frustrates the bankruptcy. It frustrates the – It dissolves all the proceedings. It delays and fragments. Not in this case, Your Honor. Well – I mean, not – that's where – the showing has to be what is the inherent conflict. There's a lot of – The only – I'm sorry, go ahead. I was going to say there's a lot of distrust in this case about the processes of cash call and the immunities and – I fully understand that baggage. And I'm not here today to defend my client's business model. I am here to say, though, that the district court decision is in error. And that if allowed – if the law is in the Fourth Circuit, because it would be contrary to every other circuit, if the law is that the mere overlap of claims between core and non-core claims means the bankruptcy court has discretion whether to send something to arbitration, then you're going to see a lot more confusion and ambiguity. And that doesn't happen. The only time actually it's happened, for instance, it would be the Gandy decision, which is a Fifth Circuit decision. That's the only time I can recall where a court of appeals said we're not going to send a non-core claim to arbitration. And the reason it said that – Can I ask you why White Mountain wouldn't provide the district court with – or do what it did? First of all, White Mountain said that this is a core claim. Two, there were significant findings where the court said it would seriously interfere with the debtor's bankruptcy. Thirdly, it was not addressing a core claim that was ancillary or after the fact of the debtor's reorganization. The law in other circuits that fills in – in other words, White Mountain really gets you to the point of you've got to look seriously as what is the inherent conflict between the debtor's ability to reorganize and the claim that's been asserted. And it said here there's a serious interference, and that's what Judge Michael said to lead off the opinion. We're here to say that this case will not go to arbitration because it in fact seriously interferes with the debtor's ability to reorganize. That is not this case. Sometimes you're better off not taking an appeal, perhaps. Perhaps. The problem – if I may respond to that one question, Your Honor. The problem is – It really wasn't a question. Thank you. All right, Mr. Silver, you have some rebuttal. We'll hear from Mr. Wessler. Thank you, Your Honor. May it please the Court, Matt Wessler for the appellee, Oterio Moses. This case begins and largely ends with this Court's decision in White Mountain. There, this Court looked at the interplay between the FAA and the Bankruptcy Code, and it determined that there is an inherent conflict between the two statutes. And I think what's really important about that conclusion are the reasons why the two statutes conflict. In White Mountain, this Court explained that the very purpose of bankruptcy is to modify the rights of debtors and creditors by centralizing – Was it a categorical ruling, or did it depend on circumstances? I'm sorry, Your Honor? Was the holding in White Mountain a categorical ruling that there is an inherent conflict in every case, or is it dependent on circumstances? The latter, Your Honor. To be really clear, there is no categorical rule about whether there is an inherent conflict when a bankruptcy court is faced with a motion to compel arbitration. It is fact-specific, and it depends very much on the nature of the claims that are at issue in the case. But what the Court said in White Mountain, I think, is worth reiterating. The Court said that arbitration in a particular case where there is this conflict is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights contingent upon an arbitrator's ruling rather than the ruling of a bankruptcy judge. And I think that inconsistency is front and center in this case. As both the bankruptcy judge and the district court below made clear, at the center of this adversary proceeding is Cash Call's effort to recover its loan out of Ms. Moses' estate. And Ms. Moses' objection to that claim against her estate, because the loan agreement upon which Cash Call's proof of claim is based, is illegal. Sending that matter to arbitration would unequivocally permit an arbitrator to decide a core bankruptcy issue, which is the validity of Cash Call's claim under Section 157B2B of the Bankruptcy Code. And just to link this up with White Mountain, that is exactly the core issue that was at stake in White Mountain. It was a claim for allowance or disallowance of a proof of claim under Section 157B2B. And so as in White Mountain where this court made very clear that sending that claim to arbitration would be inconsistent with the Bankruptcy Code's objectives of centralized decision-making and efficiency, so too here the Bankruptcy Court was well within its discretion to keep the core claims in this case in bankruptcy. And that result is also no different with respect to the Stern claim at issue in this case. Having an arbitrator resolve that claim would also run afoul of the Bankruptcy Code, because it too would have an arbitrator decide a core bankruptcy issue, which is the validity of Cash Call's loan agreement. And so it would also, in the words of this court in White Mountain, have made debtor-creditor rights contingent upon an arbitrator's ruling rather than that of a bankruptcy. But the result of that decision would only have an impact as whether or not it would increase the estate of the bankrupt only. In this case, even though an arbitrator would be deciding that issue, the only question would be whether or not there's going to be additional money going to her. And that certainly can't be the discretion you could use for a non-core claim not to go to arbitration, is it? Your Honor, to be really clear, that's not the only outcome if that particular claim were sent to arbitration. If an arbitrator, even if you could get to arbitration, let's assume you can, arbitrator were to decide that the underlying loan was valid, was not illegal, then what you have is exactly what has happened in National Gypsum and in Gandy and in Eber out of the Ninth Circuit. You have the potential for collateral estoppel that could bind a bankruptcy judge who's trying to decide whether the proof of claim is enforceable against the estate. They've abandoned that. The Bankruptcy Court can't make a moot case live, which is not before us, but I can't understand how you just make someone stay in a case. They're abandoning their claim. They say, we're not going to enforce this against them. With respect, Your Honor, they have not abandoned their claim. They certainly tried to abandon their claim. They did the best they could. No, but Your Honor. You're right, they couldn't because the judge wouldn't allow it. That's correct, Your Honor. But the only reason they sought to abandon their claim was to avoid the possibility that they would have a core claim still within the Bankruptcy Court to keep them out of their newly preferred form of arbitration. The point that the bankruptcy judge and the district court who affirmed the bankruptcy judge's denial of their effort to withdraw, the point that those lower courts made about this withdrawal effort is that it is essentially a gamesmanship effort to manipulate the fora. And in bankruptcy, unlike if you were in district court, has different rules associated with when you can abandon a proof of claim. Because as the Fifth Circuit and the Ninth Circuit have said, the filing of a proof of claim under the Bankruptcy Code invokes special rules of bankruptcy. You can't, once you file that claim, simply dismiss it when it suits you. Because it potentially prejudices the debtor and the trustee who has to administer the estate. What's the prejudice here? The prejudice is exactly what Cash Call wants, which is to get… No, no, no. What's the prejudice here from allowing them to abandon their claim? I'm not following this. The prejudice, Your Honor, the core claim then goes away. And all that's left is the stern claim, and it makes their effort to compel arbitration stronger. But how is that prejudice? I'm not following this at all. I'm sorry, Your Honor. The reason that's prejudice… So the prejudice is having to arbitrate? That's correct, Your Honor. The potential delay associated… Without any effect on the bankruptcy, other than the positive effect that Judge Gregory just described, this is beginning to sound like Alice in Wonderland. I'm sorry, Your Honor. We won't let the claimant go, because if we let the claimant go, we'll have to let the claim go and order everybody to arbitration for what's left, which can't possibly have an adverse impact on the bankruptcy. That's a little much for me. What am I missing? Let me step back and try to clarify. Because remember, you represent one debtor, one litigant here. You don't represent the whole world of potential debtors, right? That's correct, Your Honor. Okay. So your arguments, I would assume, have to be based on this case, not the thousands of other possible scenarios. What my client, Ms. Moses, wants is for the bankruptcy judge to resolve this Section 157B2B claim about whether cash calls claim can be enforced against the estate. Which they've abandoned. With respect, Your Honor, that is not the record in this case. The record in this case is that that proof of claim remains pending in the bankruptcy court. Because the bankruptcy judge won't permit them to abandon it. Yes, Your Honor. In a different… Do you see why I used Alice in Wonderland? I understand, Your Honor. But as this case comes to the… Is that issue on appeal? The record, it is not, Your Honor. As this case comes to this court, the record in this case is that this proof of claim remains pending against the estate. And it is a core claim that is viable and enforceable. And if this case came here, but there was no core 157B2B claim in this case, we might have a very different kind of case. If cash call is ultimately successful in withdrawing the core claim in bankruptcy, then if all that's left is that stern claim, then the discretion that the bankruptcy judge exercises might look very different. Okay, so perhaps I am missing something. You're saying that the question of the propriety of the denial of the withdrawal of the claim is not before us? That's correct, Your Honor. It is absolutely not before this court. That issue didn't… And how would it have been before us? Had cash call appealed the denial of the proof of their motion to withdraw the proof of claim? So they didn't specifically appeal that? That's correct, Your Honor. So your argument, I see your argument is that they're trying to hold that back, what, pending the outcome of this appeal? No, Your Honor. I don't… So they can take a second appeal? Your Honor, I'm not in a position to say what their strategic decision is. I'm just trying to get some idea. Your Honor, I honestly don't know what their strategy is with respect to the proof of claim. Did you hear counsel say a few minutes ago that we've abandoned that claim? I understand that that's the representation, Your Honor. Is it just the representation, or is that a binding, judicially-estopped representation? Your Honor, they have… Do you actually think they can go back and revive that claim after counsel stood here and said that claim's been abandoned? Whether or not they can revive it, Your Honor, the district court made its decision in this case, keeping the claims in bankruptcy based on the existence of that proof of claim. That abandonment, if we took his statement here in court that it's abandoned as abandonment, then we would be overruling the bankruptcy court and the district court on that issue. You would, Your Honor. And without an appeal. You would, Your Honor, but that issue has not been presented in this appeal. I understand. But in some context, sometimes the law has to have some common sense. We're looking at whether or not it was appropriate not to seek a non-deferred claim to arbitration. And that's in the context of what impact it would have on the case. So you're saying we could ignore counsel as an officer of the court's representation, that they're abandoned, which I think he'd have a hard time withdrawing now and on the record. I'm sure you would bring that to their attention in the courts. And so we ignore the facts of the case. And then, so we're going to do that in a vacuum. How do we not analyze that in the context of impact on a bankruptcy? It's almost like the bankruptcy court is like it's a solution in search of a problem. Let me suggest that it's in fact the solution and that the bankruptcy judge properly exercised its discretion. And it's for the reason, Judge Gregory, that you initially suggested. It can resolve the underlying claims, whether it disallows the proof of claim or finds that it's abandoned. It can then turn to the stern claim in the case and easily resolve that claim as well. And then whatever recovery is made under that claim can be properly applied to the bankruptcy estate and can be properly applied to modify the plan that Ms. Moses has to play. Hey, now you asked initially and I just want to return to this. What's the problem with sending if they've just abandoned their claim for money out of the estate and all we have left is this counterclaim. What's the problem with sending that to arbitration? And courts have dealt with this problem. The Fifth Circuit has dealt with this problem. Let's just I want to just be really clear. Let's just take the proof of claim question out of this case for one minute. Let's just talk about the stern claim. That is technically now a non-core claim, but it arose in a proceeding in which there was a core claim. And there is a meaningful impact that resolving that claim efficiently without delay has on this case. This case is not over. It will absolutely. That's correct, Your Honor. This is not like a Chapter 7 proceeding, which is a snapshot proceeding that begins and ends with plan confirmation. The Second Circuit in the MBNA v. Hill case reversed a bankruptcy court's decision to keep even core claims in bankruptcy where the proceeding was a Chapter 7 proceeding and where the plan had been confirmed and the bankruptcy case was closed. Because nothing that happened in resolving that claim could affect the debtor or the creditors or the estate. That is not the case here. How would you write the opinion? Because I think you agree White Mountain doesn't resolve this case as it stands. That is, as I understand White Mountain, as it's written, the outcome here is not in your favor. So for you to win, some tweaking of White Mountain would be required. You agree with that, I assume? Your Honor, I actually don't agree with that. Did you just say see White Mountain and affirm the district court? Yes, because what… In your faith, you really do? I really do, Your Honor, and I think that's what the bankruptcy court said. I think that's what the district court who reviewed the bankruptcy court's decision here… Well, they didn't say very much at all, frankly. Well, I think they said… They don't really explore the meaning of White Mountain. I think the meaning of my view on White Mountain, Your Honor, and I think the Fifth Circuit and the Ninth Circuit have looked at White Mountain and interpreted it this way, is that there is an inherent conflict between the two statutes where the claims in the case involve core bankruptcy issues and where sending the claims to arbitration would undermine the objectives of the bankruptcy code. But I thought we were still in that minute when you said, okay, let's assume the core claim's not here. I thought we were still in that minute. I understand, Your Honor. Now, if this court believes… I'm sorry, Your Honor. I don't believe that this case presents that minute on the record, but if we step back and we assume that it does, and that all that exists is the Stern claim, yes, it is a much… I think you're right. …with a non-core claim exclusively in bankruptcy court. Okay, so that's what I was asking. I apologize, Your Honor. How would you tweak White Mountain to achieve that? I think the principle that White Mountain stands for is that where a claim… and let me be clear, I do not think that the core-non-core distinction, I don't think White, as I said at the very beginning in response to Judge Niemeyer, does not establish a categorical rule. Right. Core claims stay, non-core claims go. I think what the principle that White Mountain stands for is that where a claim implicates a core bankruptcy issue, a bankruptcy court has discretion to decide what to do with it, and where sending it to arbitration would conflict with certain key bankruptcy code objectives like delay, like the potential for duplicate proceedings, for inconsistent results, then the bankruptcy court is entitled to exercise its discretion to decide what to do. And let me be clear. An affirmance here does not change the law in the Fourth Circuit. There are plenty of cases that will still come up and have come up where bankruptcy courts will send these claims to arbitration. There are several that are cited in the briefs, In Re Freeze, In Re TP Inc. In both of those cases, courts were faced with either just non-core claims or even core claims and said it's better if we send these to arbitration. One of the key points that those courts looked to was had there been a pre-existing arbitration on some of these issues. In fact, in White Mountain itself, there was a pre-existing arbitration, and yet the court said we still think it's within the bankruptcy judge's discretion to decide what to do. But that discretion authorizes and allows bankruptcy judges to send claims to arbitration where appropriate. But we've got to be able to tell bankruptcy judges how to exercise that discretion or what the outer boundaries of that discretion are. Sure, and I think there are certain key objectives that this court identified in White Mountain. Broadly, they are the goal of centralizing all disputes surrounding a debtor's estate as well as maintaining an efficiency of the administration. And my challenge, thinking about this, is how do we say all of that on this record? I think the key is that it's an abuse of discretion. I think if the bankruptcy judge had the discretion, there was nothing arbitrary or capricious. That's a tautology there. If you start with that kind of logic, you're going to the bottom line. What is the limiting aspect of it? In this case, you would be saying, you would agree, you can't refuse arbitration solely because that claim might add to the estate of the bankrupt. You agree with that? That can't be the sole reason. It can't be the sole reason for not sending the arbitration is that the claim outcome might increase the bankrupt's estate. That can't be the sole reason. You agree with that? Sure, I agree with that. That can't be the sole reason. It seems to me that your Stern type defense, that's the sole result of that, whether it's going to increase. Now, in this case, since that can't be the sole reason, what is the reason for using discretion, not sending this to arbitration in this case? Tell me that. Your Honor, the delay. The delay in doing what? The delay associated with having this claim go someplace else that we don't even know exists. But that delay only is the result of, is delayed knowing what the increase in the bankrupt's estate would be. You're back to where? You're back to the proof of claim. But the proof of claim, that's really a red herring. That's kind of almost ridiculous. You're going to keep something in the case just to keep you from not sending it to arbitration. That would be a dangerous precedent to send. To say that, oh, we want to abandon it. No, you can't abandon this because this is the only linchpin to keep this from arbitration. I mean, that case would be folly. But what I'm saying, what do you have in this case that would be an impact other than delay in knowing what the increase might be in the bankrupt's estate? Go ahead, what's the next one? The possibility of piecemeal litigation. The possibility that you're having to litigate bankruptcy claims associated with your estate in bankruptcy court, and then also at the same time having to litigate this separate claim in a different forum. Well, she agreed to arbitration. That's the whole idea. Believe me, Fourth Circuit is the most, I used to say the Fourth Circuit never saw an arbitration agreement it didn't like. Otherwise, it's one of the strongest circuits on it. That's the whole concept. You agreed that you didn't want courts and judges to fool with your case. You want somebody else to mess with your case. She agreed to that. That agreement is still in place. That's why we're looking at it. FAA talks about that. So, any piecemeal is brought by the fact that she agreed to that. Now, what's the next point? About why we should... The ability to have a bankruptcy judge have control over the administration of all issues related to the estate. She didn't want that. She agreed in writing that she wanted to be arbitrated. That's not true. It's not true? She wants all of her estate... I'm not talking about now. I'm talking about when she signed the agreement. Your Honor, all of these cases that involve this question all involve the same broad issue of there's an otherwise enforceable arbitration agreement. But what the majority of circuits including this one have said is that the FAA yields... There's only examples, frankly, in the landscape of federal law, but the FAA yields the interest I've just identified in the bankruptcy code because the bankruptcy code has these core objectives of trying to centralize all disputes related to a debtor's estate. But that's a categorical matter. You've agreed. It's not a categorical rule. I agree, and that's where the discretion of a bankruptcy judge comes in. It's a continuous jurisdiction until that works out. Also, the assets aren't fixed. I mean, it seems to me if the claims are kept in the bankruptcy court and adjudicated in the bankruptcy court, the proof of claim and the stern claim, it could well be that the creditors and the debtors are benefited. That's absolutely correct. That's the whole interest of the trustees to have this all adjudicated in one place. That's correct, Your Honor. That's no limitation at all because then the bankruptcy estate is never fixed in, in that sense, because there are many claims that might have an impact on increasing the bankruptcy estate. Then you basically would have no rule. May I respond? Please, go ahead. You'd have no rule, would you? Your Honor, that's not correct. The cases end. They have a fixed duration. The case is closed. It's exactly like the MBNA versus Hill case at that point. The case is over. The trustee has no interest in the case. The other creditors have no interest in the case. All we're talking about for a Chapter 13 proceeding is a specific window during which a bankruptcy court should have the ability to control decisions about what gets paid into the estate and who gets money coming out of the estate. And the claims in this case invoke both of those questions. Thank you, Your Honors. Thank you. Mr. Silver? Thank you, Your Honor. Judge Davis, I think you're entirely correct. In this case, it's not about headlines about the benefits or the purposes in general behind the bankruptcy law. It's where and what the Court of Appeals have repeatedly said in looking at whether there's an inherent conflict and whether you send a claim to arbitration. The bankruptcy court sees these things, sees hundreds of these cases. And in this case, we have a woman who doesn't have very many assets. She has this note where she's being forced to pay 233%. She says the proof of claim is invalid because I shouldn't have to pay 233% on the proof of claim. You guys then try to withdraw the proof of claim so as not to be exposed to giving the bankruptcy state more money in the bankruptcy. She has a claim under North Carolina law, the Stern claim, that maybe she's entitled to some statutory damage because of usury and all that. Now, what you would like to do is to withdraw the claim. Bankruptcy judge denied that. You'd like to now send the Stern claim and maybe the proof of claim. I guess you have to because the proof of claim is still there, somehow to arbitration in a procedure which is totally undefined and very unclear how it's going to work under this language. And this woman who doesn't have any money, she's going to have to pursue that and the bankruptcy trustee is going to have to wait. And so the bankruptcy judge says, look, it's more efficient to take care of it here. And this is a discretionary decision and the district court looked at it. Isn't it a pretty high bar to reverse for abuse of discretion? No, Your Honor. It's not an abuse of discretion standard. You have to find instead, and we cite all the courts of appeals decisions. Well, I respectfully suggest that I think our standard is abuse of discretion in this case. Okay. And with respect, Your Honor, in the other circuits that have addressed that issue. Well, we have White Mountain and it depends on the circumstances. It's not categorical. We have a core claim here. And what the Supreme Court says, however, when you're considering whether or not to enforce an arbitration clause is the mere possibility of inconsistent results or the mere possibility that they're common or shared issues. Or efficiency or frustration of the bankruptcy process. But this woman is trying to resolve her life in one place and to have her go to the Cheyenne tribe or to some jams or bring a tribal member to jams. It's just unclear. And she has to hire a lawyer to go do that. And the bankruptcy trustee says, look, this is not, this is a straightforward claim. We can resolve that here and it'll help the creditors one way or the other. It'll help you efficiency wise. That's always true with respect to a non-core claim that seeks additional damages. Except you ignore the fact that the core claim is here. Number one. And number two, the core claim is essential to the non-core claim. They are so inextricably tied. In other words, the only defense to the proof of claim is that it's an illegal lump. And once you determine that, statutory damages follow automatically. No, they don't, Your Honor. With all respect, they don't. The statute, if you read the statute and what's required, it doesn't depend merely on the lawyer. She has to prove, she has a number of elements of proof. But again. But she still has to determine whether it's an illegal claim, which is the very same thing she has to do in opposing the proof of claim. That's one potential element, but not necessarily. The statute says, and in fact requires, a showing that there's been harassment threats or things like that. Let me also point. Or a different type of death. Let me also point out, well, she claims emotional distress. I don't know if she does, but she also claims the effort to collect an illegal debt, which is core to the Stern claim. That is one thing she says, Your Honor. That's correct. Okay. I see my time is up. Yeah. Okay. One last question. Yes. Thank you, Your Honor. Let's clarify, if we can. I understand you straddled the line on your way to this court. But as I understand your argument today, you have abandoned your claim. The answer is yes. And with respect to straddling, it's been our position from day one that we have abandoned that claim. Well, but you didn't brief it that way. No, because what we did brief is that both the core and non-claim and we're not, there's not a right of interlocutory appeal with respect to the withdrawal, which is treated like a dismissal with prejudice or without prejudice. Okay. And Judge Boyle denied our ability for leave to appeal that order. Okay. So that, but you're right. If we gave effect to your judicial admission at this point, we would in essence be overruling the bankruptcy judge and the district judge who would not accept that. With all respect, Judge Niemeyer, I disagree. That position stands regardless. That's what sort of the absurdity of it is. No, it isn't. She wants a declaration more, she wants a declaration that your proof of claim is illegal. She doesn't want you to shop around and she's entitled to have her day in court and she wants it in the bankruptcy court. And that is a constitutionally moot claim. And it helps her. It helps her a lot. It's not constitutionally a moot. Because you didn't agree to the declaratory judgment that your loan is illegal. That was her first point of relief in her claim. I think the standard, your answer is the standard is whether or not, we're not here to decide whether or not what's good to help her. I mean, if that's the law, then the law is, there's no law. That's right. And you would never send an arbitration. You'd never send one because it would help them. I mean, that's not, that's the standard. That's why I suggest, again, I go back to where I started. If this decision is affirmed, this circuit, with all respect, would be an outlier in comparison to the other circuits. Thank you. Thank you. We'll adjourn court, signee die, and come down and greet counsel.  stands adjourned, signee die. Godspeed to the United States and this item of court.
judges: Paul V. Niemeyer, Roger L. Gregory, Andre M. Davis